KEN WILLIAMS (#427527)                          CIVIL ACTION

VERSUS

JAMES LeBLANC, ET AL.                           NO. 10-0268-FJP-CN

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, January 11, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

KEN WILLIAMS (#427527)                                    CIVIL ACTION

VERSUS

JAMES LeBLANC, ET AL.                                     NO. 10-0268-FJP-CN

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion for Summary Judgment, rec.doc.no. 17. This motion is opposed.

The pro se plaintiff, an inmate previously confined at Dixon Correctional Institute ("DCI"), Jackson, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Secretary James LeBlanc, former Secretary Richard Stalder, DCI Warden Steve Rader, Ass't Warden Gary Shotwell, Educational Director Angela Day, Classification Officer Faith Cuevas, Classification Officer Sibil Garig, Col. Bently, Col. John Smith, Lt.Col. Brumfield, Major Wordly, Capt. K. Steward, Capt. McCray, Capt. Miley, Lt. Moore, Msgt. Russell Sanders, Nurse Travis Day and Nurse "Jane Doe", complaining that the defendants violated his constitutional rights while he was confined at DCI through deliberate medical indifference, through a failure to provide him with incentive pay and/or appropriate compensation, through a denial of visitation rights, through denials of his requests for a transfer, through threats and intimidating conduct, through wrongful disciplinary reports and punishment, through denials of administrative grievances and disciplinary appeals, through forced educational testing and alteration of test results, through wrongful job termination and re-assignment, through deprivation of property, through unconstitutional conditions of confinement, through racially discriminatory practices, and through a retaliatory transfer to his current place of confinement at the River Bend Detention Center in Lake

Providence, Louisiana.[1]

The moving defendants request summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's administrative remedy proceedings, and the affidavit of Rhonda Z. Weldon. Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Supporting affidavits must set forth facts which would be admissible in evidence, and opposing responses must set forth specific facts showing that there is a genuine issue for trial. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. <u>Anderson</u>, <u>supra</u>.

The basis for the defendants' motion is their assertion that the

---

[1] Attempts by the United States Marshal's Office to serve defendants Col. Bently, Lt.Col. Brumfield, Major Wordly, Capt. K. Steward, Capt. McCray, Capt. Miley, Lt. Moore, Msgt. Sanders, and Nurse "Jane Doe" have proven unsuccessful because service of process has not been accepted on behalf of these defendants by the Louisiana Department of Public Safety and Corrections. Specifically, a representative of the Department has represented that "they have no knowledge of these individuals." <u>See</u> rec.doc.no. 8. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims asserted against these defendants be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon them.

plaintiff has failed to exhaust administrative remedies relative to his claims asserted against the defendants. In this regard, pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him prior to the institution of suit in federal court relative to prison conditions. This provision is mandatory and applies broadly to "all suits about prison life". Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.ed.2d 12 (2002). Further, a prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The primary purpose of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'". Johnson v. Johnson, supra.

From a review of the administrative remedy proceedings submitted by the defendants in support of their motion, it appears that, for the most part, the defendants' motion is well-taken. Specifically, five (5) of the seven (7) administrative grievances ("ARPs") which the plaintiff identified as having been filed relative to the claims asserted in this proceeding were "rejected" at the first step of the two-step administrative process because they were not submitted in proper form or in compliance with procedural rules. As a result, they were not fully exhausted. For example, the rules applicable to the administrative grievance process provide that a grievance may be rejected by prison

officials during initial screening because it involves "disciplinary matters" (for which a specialized administrative proceeding is available), because "[the inmate has requested a remedy for more than one incident", or because "[established rules and procedures were not followed". See 22 La. Admin. Code, Part I, § 325(F)(1)(a)(ii), (vii) and (viii).   As a result, the plaintiff's grievance No. DCI-2009-0391 (dealing with the plaintiff's appeal arising from a disciplinary charge issued on March 24, 2009) was rejected as involving a disciplinary matter, and grievances Nos. DCI-2009-0386 (dealing with forced educational testing, with alteration of test results, and with improper computation of a disciplinary sentence), DCI-2009-0388 (dealing with a failure to award appropriate incentive pay and with the mishandling of the plaintiff's mail), DCI-2009-0389 (dealing with an alleged improper work assignment, with a wrongful interrogation, and with a request for a geographical transfer) and DCI-2009-0390 (dealing with abuse of the prison grievance system, with the wrongful denial of an appeal, with retaliation, and with a request for a geographical transfer) were all rejected as requesting remedies for more than one incident.   Accordingly, it appears clear that the plaintiff has failed to exhaust administrative remedies relative to these claims and that the defendants' motion should be granted with respect thereto.[2]

---

[2]     The plaintiff asserts that his grievances should be deemed exhausted because he filed same as "emergency" grievances, which should have entitled them to special treatment.  This argument is without merit.  According to the prison rulebook, emergency grievances should be sent directly to the shift supervisor, instead of to the warden as with a normal grievance, and the plaintiff acknowledges that he sent his "emergency" grievances to neither and, instead, sent them to the Office of Internal Affairs of the Louisiana Department of Public Safety and Corrections.  He thereby failed to comply with the rules applicable to the filing of his grievances and so was not entitled to special treatment thereof.

In addition to the foregoing, the Court notes that several of the plaintiff's claims have not been asserted in any of his administrative grievances. Specifically, and as noted below, there is no mention in any of the plaintiff's grievances regarding his alleged exposure to excessively hot conditions on June 16, 2009, or to his alleged retaliatory transfer from DCI to his current place of confinement. Because of the failure of the plaintiff to assert these claims through the prison administrative process, these claims are also subject to dismissal under 42 U.S.C. § 1997e.

Finally, and notwithstanding the foregoing, the Court is authorized, notwithstanding the plaintiff's failure to exhaust administrative remedies, to dismiss a claim or claims if the Court finds that the claim is frivolous, malicious, or fails to state a claim upon which relief may be granted. See 42 U.S.C. § 1997e(c)(2). A claim is properly dismissed under this section if the claim lacks an arguable basis in either fact or law. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), citing Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995). Accordingly, in addressing the substantive allegations of the plaintiff's Complaint, below, and in light of the manner in which these claims are asserted herein, the Court will address certain of these claim notwithstanding that they have not been administratively exhausted.

Turning to the claims asserted in the plaintiff's Complaint, and addressing these claims in apparent chronological order, the plaintiff first asserts that in July, 2004, he injured his back while lifting two locker boxes. When he was thereafter taken to the prison infirmary, defendant Nurse Day forced the plaintiff to get out of his wheelchair and

walk some distance in extreme pain, issued the plaintiff only Ibuprofen and a one-day "forged" duty status, and failed to schedule a follow-up doctor's appointment.  The next day, the plaintiff requested emergency medical attention and was seen by a Nurse Williams (not named as a defendant herein) who denied the plaintiff medical attention, resulting in the plaintiff being forced to perform his assigned work duties which were unduly painful.  The plaintiff thereafter went to see Dr. Perego at the prison (not named as a defendant herein),[3] who also allegedly failed to provide appropriate treatment for the plaintiff's back complaints and failed to refer the plaintiff to see a back specialist.  In addition, Dr. Perego allegedly failed to properly treat a separate urinary complaint made by the plaintiff, failed to provide medication or medical advise relative to this complaint, and failed to refer the plaintiff to see a urinary specialist.

The plaintiff's claim regarding his medical treatment is not properly before this Court.  Inasmuch as there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the forum state's general personal injury limitations period for such claims.  <u>Owens v. Okure</u>, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989).  In Louisiana, the applicable period of limitations is one year.  La. Civ. Code Art. 3492.  Further, under federal law, a cause of action under 42 U.S.C. § 1983 accrues when the plaintiff knows of or has reason to know of the injury which forms the basis for his

---

[3]     Dr. Perego is not named as a defendant in the Caption of the plaintiff's Complaint nor is he listed in the section of the Complaint wherein the plaintiff provides a list the defendants.  Accordingly, the Court will not consider Dr. Perego to be a defendant in this proceeding. The Court notes, however, that the plaintiff prays for relief against Dr. Perego in later sections of the Complaint.

cause of action.  Gartrell v. Gaylor, 981 F.2d 254, 257 (5th Cir. 1993);

Lavellee v. Listi, 611 F.2d 1129, 1131 (5th Cir. 1980).

In the instant case, the plaintiff knew of or should have known of

the basis for his claim relative to his medical care in 2004, at such

time as he was allegedly provided with deficient care by health care

providers at DCI.  Accordingly, this claim, asserted in a lawsuit filed

in April, 2010, more than five years thereafter, is clearly time-barred.[4]

The plaintiff next complains that when he arrived at DCI (on an

unspecified date), he was entitled to receive incentive pay immediately,

or within six (6) months thereafter.  He asserts that, instead, he did

not receive incentive pay until two years later and then only received

$0.02 per hour instead of the required $0.04 which was mandated by prison

regulations.  In addition, the plaintiff complains that while confined

at DCI, he worked for an entity entitled "Prison Enterprises" for

approximately eleven (11) months, during which time he should have

received a mandated $0.20 per hour in wages.  As previously noted, this

claim has not been administratively exhausted.  Further, inasmuch as the

plaintiff fails to provide the dates upon which he began receiving

incentive pay or began working for "Prison Enterprises", it is likely

that his claim of non-payment and/or inadequate payment is time-barred

to the extent that such alleged wrongdoing occurred more than one year

prior to the institution of this lawsuit.  Finally, Louisiana law

provides that the Secretary of the Louisiana Department of Public Safety

and Corrections is entitled to establish various rates of compensation

---

[4]    The Court further notes that this claim is not exhausted
inasmuch as the plaintiff's ARP, filed in 2004, No. DCI-2004-0342, was
denied at the first step, and the plaintiff failed to proceed to the
second and final step of the administrative process.

for inmates, depending on the skill, industry and nature of the work performed, see La. R.S. 15:873, which rates are set forth in the Louisiana Administrative Code, see LAC 22:I.331.  The plaintiff has failed to sufficiently allege that prison officials have failed to comply with the provisions of the referenced statute and regulations.

The plaintiff next complains of an incident allegedly occurring in August, 2005, at which time a person who was visiting the plaintiff (Bridget Williams) had her money taken by a vending machine located in the visiting area.  When the visitor complained to a Sgt. Banks (not named as a defendant herein) and to defendant K. Steward about this occurrence, nothing was done to correct the problem and, instead, the security officers "initiated and created a provoking environment" which caused the plaintiff's visitor to leave.  The plaintiff further complains that, after he filed a request for an investigation relative to this incident, Bridget Williams was removed from the plaintiff's visiting list and was not allowed back on the list for approximately five (5) years.

As with the plaintiff's claims regarding his medical care, these claims, arising in 2005, are subject to dismissal as being time-barred, relating as they do to events occurring more than one year prior to the filing of this lawsuit.  Moreover, there is no specific reference in any of the plaintiff's administrative grievances regarding these events which allegedly occurred in 2005.[5]  Accordingly, these claims are subject to

---

[5]     Although the plaintiff makes reference in grievance No. DCI-2009-0391 to instances when family members allegedly "show[ed] up for a visit ... only to be depressingly and painfully let down and turned around", this non-specific assertion in the grievance is not sufficient to have placed prison officials on notice of a single incident allegedly occurring in 2005.

dismissal pursuant to 42 U.S.C. § 1997e.[6]

The plaintiff next complains that on March 23, 2009, he approached defendant Faith Cuevas and informed the defendant that his job assignment was unfair and that he was not going to continue doing it.  The next day, defendant Cuevas told the plaintiff that he would be required to do any job that was assigned to him.  When the plaintiff failed to accede to this statement and instead made statements provoking defendant Cuevas to take further action, defendant Cuevas escorted the plaintiff to the "bullpen area" where the plaintiff was then interrogated in a threatening manner by defendants Col. Smith and Major Wordly.  After this interrogation, the plaintiff was charged with a disciplinary report for engaging in a "Work Offense".  On March 25, 2009, the plaintiff was taken before a disciplinary board, chaired by defendant Lt.Col. Brumfield and, without being afforded due process, was improperly found guilty and was given an excessive sentence of ten (10) days in isolation and thirty (30) days of room confinement.  When the plaintiff appealed this disciplinary sentence, his appeal was wrongly denied, and when the plaintiff filed an administrative grievance relative to the denial of this appeal, the grievance was wrongly rejected by prison officials.

The plaintiff's claims relative to the foregoing do not rise to the level of a constitutional violation.  Initially, the law is clear that an inmate plaintiff may be required to perform work assigned to him as part of his sentence.  Rochon v. Louisiana State Penitentiary Inmate

---

[6]    The plaintiff states in his opposition to the defendants' motion that he intended to name Bridget Williams as an additional plaintiff in his original Complaint.  This request comes too late and will not be considered.  Moreover, Bridget Williams did not sign the original Complaint and has not signed any subsequent pleading, and the plaintiff, as a pro se litigant, does not have standing to represent or to assert the rights of third parties.

Account, 880 F.2d 845 (5th Cir. 1989). Further, an inmate has no constitutionally protected liberty or property interest in any particular prison job assignment. See Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1989). See also Bulger v. United States Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995)(federal prisoner). Accordingly, defendant Cuevas was well within her rights to instruct the plaintiff that he was required to perform any work that was assigned to him, and she was authorized to take disciplinary action against the plaintiff when he explicitly indicated that he did not intend to comply. Further, although the plaintiff complains of the threatening manner in which he was thereafter interrogated, he concedes that he was not physically abused during the interrogation, and the law is clear that threats and verbal abuse alone do not amount to claims under section 1983. "Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." McFadden v. Lucas, 713 F.2d 143 (5th Cir.), cert. denied, 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983); Burnette v. Phelps, 621 F.Supp. 1157 (M.D. La. 1985); Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973). Finally even if the resulting disciplinary report was issued in error, the issuance of a false or wrongful disciplinary report, without more, is not a constitutional violation cognizable under § 1983. See Collins v. King, 743 F.2d 248 (5th Cir. 1984). And to the extent that the plaintiff believes that he was denied due process during the subsequent disciplinary board proceedings, an inmate has no liberty interest in procedures attendant to disciplinary board proceedings where the punishment imposed does not result in an atypical and significant deprivation (evaluated in the context of prison life) in which the State might conceivably have created

10

a liberty interest for the benefit of the inmate. <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In <u>Sandin</u>, the Supreme Court held that a disciplinary sentence of placement in segregated confinement failed to rise to the level of a constitutional claim. In the instant case, this Court similarly concludes that the plaintiff's disciplinary sentence – ten days in isolation and 30 days of room confinement – failed to result in an atypical and significant deprivation in the context of prison life. Accordingly, the plaintiff's claim relative to this issue is without constitutional merit.

The plaintiff next complains that on April 28, 2009, he was forced to undergo educational testing by defendants Angela Day and Gary Shotwell, notwithstanding that he had undergone the same testing in the past. He further complains that defendants Day and Shotwell falsified the ensuing test results and, as a result, he lost his job as an inmate counsel and was re-assigned to work in the DCI fields. As previously noted, however, the plaintiff has no liberty interest in his job assignment and may be re-classified to another prison job at any time. The classification of inmates in Louisiana is the duty of the Louisiana Department of Public Safety and Corrections, and inmates have no right to a particular classification under state law. <u>McGruder v. Phelps</u>, 608 F.2d 1023 (5th Cir. 1979). Moreover, prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. <u>Hewitt v. Helms</u>, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). In the instant case, it appears that, after the plaintiff served his disciplinary sentence in connection with the March 24, 2009, disciplinary charge, he was re-

evaluated for an appropriate job assignment and was subjected to occupational and/or educational testing in connection therewith. This Court will not second-guess the decision of prison administrators to undertake such testing. Further, inasmuch as prison officials could legitimately re-classify the plaintiff to any job assignment, regardless of the test results or any alteration thereof, the Court finds no constitutional violation in the alleged alteration of the plaintiff's test result by the defendants. This claim, therefore, is without merit.

The plaintiff next complains that on June 16, 2009, defendant Faith Cuevas ordered a shakedown of the plaintiff's property, during which a Litigation Self-Help Manual was discovered. Believing the book to have been taken by the plaintiff from the prison law library, defendants Wordly, Miley, McCray and Moore participated in confiscating the book (which the plaintiff asserted had been given to him) and issued the plaintiff a disciplinary violation for "Theft" and "Property Destruction". The plaintiff was then escorted to administrative segregation, and while awaiting the availability of a cell at that location, was held in a shower cell for approximately 1½ hours, during which time he was forced to defecate without an available toilet. He was thereafter transferred to an administrative lockdown cell which, because of an alleged lack of air circulation, was excessively hot. The next day, the plaintiff was taken before a disciplinary board, chaired by defendant Brumfield and, without appropriate due process, was found guilty of the referenced rule violations and sentenced to a 4-week deprivation of yard and canteen privileges. The plaintiff further complains that his subsequent disciplinary appeal was improperly denied.

As previously noted with regard to alleged wrongful disciplinary

12

charges and proceedings, the plaintiff's claims relative to the alleged wrongful disciplinary charge and punishment, to the alleged denial of due process at his disciplinary hearing, and to the denial of his disciplinary appeal are without constitutional merit and must be dismissed. To the extent that the plaintiff complains of the search of his property, this claim is also lacking in constitutional merit. Specifically, a lawfully incarcerated inmate has no legitimate privacy interest in his property, and it is not unreasonable for prison officials to conduct periodic and unannounced searches of same, with or without probable cause to do so, for the purpose of discovering contraband. Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Further, the confiscation of the plaintiff's book does not amount to a constitutional violation because an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of due process, provided that a meaningful post-deprivation remedy for the loss is available. Hudson v. Palmer, supra; Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).[7] The burden is on the complainant to show that an available remedy was not adequate, Marshall v. Norwood, 741 F.2d 761 (5th Cir. 1984), and the plaintiff in this case has not alleged, nor is there any evidence to suggest, that state post-deprivation remedies were unavailable or inadequate. To the contrary, Louisiana has ample remedies under which the plaintiff could have proceeded against the defendants for recovery of his property or for reimbursement for its loss. Marshall v. Norwood, supra.

---

[7]     The underlying rationale of Parratt and Hudson is that when deprivations of property are effected, either through negligent or intentional conduct of a state employee, pre-deprivation procedures are simply "impracticable" since the state cannot know when such deprivations will occur. Hudson v. Palmer, 468 U.S. at 533, 104 S.Ct. at 3203 (1984).

Finally, with regard to the plaintiff's claim that he was held in a shower cell for too long on June 16, 2009, and was subjected to excessively hot conditions in his administrative segregation cell on that date, these claims also fail to rise to the level of constitutional violation. The plaintiff's claim in this regard is essentially that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment as a result of the conditions to which he was subjected on that date. In this regard, however, it is well-settled that the Eighth Amendment prohibits only the wanton and unnecessary infliction of pain. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). While the Eighth Amendment "does not mandate comfortable prisons", Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), the Constitution imposes upon prison officials at least minimal requirements in the treatment and facilities which they provide to prisoners. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and a constitutional violation occurs when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." Harris v. Angelina County, Texas, 31 F.3d 331 (5th Cir. 1994), citing Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Second, under a subjective standard, the Court must determine whether the prison officials responsible for the deprivation were "'deliberately indifferent' to inmate health or safety". Farmer v. Brennan, supra. Specifically, the Court must determine whether prison officials were both aware of facts from which an inference could

14

be drawn that a substantial risk of serious harm existed, and whether they also in fact drew the inference. Id. The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement. Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995); Wilson v. Seiter, supra. While some conditions of confinement may establish an Eighth Amendment violation "in combination", when each would not do so alone, this will occur only when these conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. Id.

In the Court's view, the plaintiff has failed to allege the deprivation of a single identifiable human need. Although he complains that he was held in a shower cell for approximately 1½ hours on June 16, 2009, and was required, as a result, to defecate onto a Styrofoam tray, he does not allege that this was anything other than an isolated incident or that any defendant intended for this deprivation to occur. See Lowe v. Green, 2007 WL 1217875 (E.D. Tex. April 24, 2007)(dismissal of claim as frivolous where inmate forced to urinate on himself after denial of request to utilize restroom). Further, with regard to the plaintiff's allegation relative to excessively hot conditions in administrative segregation on that date, this assertion is entirely conclusory and, "[a]s a general rule, complaints about inadequate ventilation systems, without more, do not establish a constitutional violation." Taylor v. Woods, 2005 WL 1475316 (E.D. Tex. June 22, 2005). See also Johnson v. Thaler, 202 F.3d 265, 1999 WL 1131941 (5th Cir. 1999) ("The appellants' allegations of inadequate ventilation and excessive heat do not entitle

them to relief under 42 U.S.C. § 1983"). Moreover, the plaintiff acknowledges that he was released from administrative segregation the next day, on June 17, 2009, and he does not allege that he suffered any ill effects as a result of the uncomfortable conditions on a single date. Finally, pursuant to 42 U.S.C. § 1997e(e), the law is clear that, "[n]o Federal civil action may be brought by a prisoner confined in a ... correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Accordingly, in the absence of any allegation of actual injury or of the deprivation of a single identifiable human need, the plaintiff has failed to allege claims which amount to a constitutional violation. For this reason, these claims must be dismissed as legally frivolous.[8]

The plaintiff next asserts claims that (1) in June and July, 2009, he requested information from prison officials regarding certain items of his outgoing legal mail and requested copies of his "past filed complaints", but he received no response to these requests, and (2) on June 17, 2009, he made a request for medical treatment, but when his blood pressure reading was reported to be 117 over 98, an unidentified nurse told him that he was okay. These claims are without merit. The plaintiff has no constitutional right to a favorable response to his requests for information from prison officials, see, e.g., Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005). Further, he has failed to allege any harm or injury resulting from the medical care provided to him on June 17, 2009. Finally, he has failed to identify any defendant who was

_____

[8]    The Court further notes that the plaintiff's claim regarding excessively hot conditions was nowhere asserted in any of his administrative grievances and, so, is subject to dismissal for this reason as well.

personally or directly involved in the alleged misconduct which occurred on the referenced dates. In this regard, to be liable under § 1983, a person must either have been personally involved in conduct causing an alleged deprivation of constitutional rights, or there must be a causal connection between the conduct of that person and the constitutional violation sought to be redressed. Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983). Having failed to name any person as a defendant who participated in the incidents complained of, the plaintiff has failed to allege a cause of action relative to these claims.[9]

The plaintiff next complains that on July 14, 2009, he was made to pick grass along a fence-line by defendants Msgt. Sanders and Capt. Miley, notwithstanding that there was no grass to be picked. The plaintiff further complains that he was subjected to oppressive supervision while he performed this task and was made to wait approximately 45 minutes after requesting to use the bathroom. As previously discussed, these claims do not rise to the level of a constitutional violation. So long as work requirements are not beyond an inmate's physical capabilities, do not endanger his life, and are not unduly painful, an inmate may be required, for the most part, to perform any task which is assigned to him. Cf., Howard v. King, 707 F.2d 215 (5th Cir. 1983). And any discomfort which may have resulted from the plaintiff having to wait to use the bathroom for approximately 45 minutes on one occasion did not deprive the plaintiff of the "minimal civilized measure of life's necessities," or deny him a "basic human need". See Harris v. Angelina County, Texas, supra. Accordingly, the plaintiff's

---

[9] The Court further notes that these claims are nowhere asserted in any of the plaintiff's administrative grievances and so are subject to dismissal for failure to comply with 42 U.S.C. § 1997e.

claim relative to these events must be dismissed.[10]

The plaintiff next complains that on August 13, 2009, he was retaliated against by unnamed prison officials who transferred him to his current place of confinement, the River Bend Detention Center, which is located in Lake Providence, Louisiana, approximately "4 hours away from home and family." As previously noted, this claim is nowhere asserted in any of the plaintiff's administrative grievances and so is subject to dismissal for failure to comply with 42 U.S.C. § 1997e. Further, inasmuch as claims of retaliation are not favored, see Woods v. Smith, 60 F.3d. 1161 at 1166 (5th Cir. 1995), cert. denied, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996), it is the plaintiff's burden to provide more than mere conclusory allegations of retaliation. As stated in Woods:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred. This places a significant burden on the inmate.... The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology

---

[10] The Court further finds that these claims have not been administratively exhausted. Although the plaintiff asserted these claims in his second-step appeal of grievance No. DCI-2009-0520, which was denied at the first step, the initial grievance was addressed to a separate and distinct issue -- the alleged inadequacy of the administrative remedy procedures at DCI -- and the second-step appeal, therefore, did not afford prison officials an opportunity at the first step to address the work-related claims. Accordingly, prison officials declined to address the work-related claims asserted in the second-step appeal, stating that "[s]ince your initial grievance was concerning the rejection of multiple ARPs," the new issue asserted in the second-step appeal "will not be addressed in this response." As has been recognized in Garrett v. Adams, 2007 WL 838927 (E.D. Tex. March 14, 2007), an inmate who "presents different arguments in his Step Two grievance ... than he does in his Step One grievance ... [does] not give fair notice to prison officials as to what exactly his complaint [is]." Therefore, the plaintiff's claims relative to the work-related issues occurring on July 14, 2009, asserted only in his second-step appeal, are subject to dismissal for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e.

of events from which retaliation may plausibly be inferred. 60 F.3d. at 1166. Finally, in order to sustain a showing of a constitutional violation, the plaintiff must assert more than a de minimis or inconsequential "retaliatory adverse act." Morris v. Powell, 449 F.3d 682 (5th Cir.), cert. denied, 549 U.S. 1038, 127 S.Ct. 596, 166 L.Ed.2d 443 (2006).

In this case, the plaintiff's allegation regarding a retaliatory transfer is wholly conclusory. The plaintiff states only his subjective belief that the transfer was based upon a retaliatory motive, and he provides neither facts nor a chronology of events from which a retaliatory motive may plausibly be inferred. Accordingly, the Court finds that the plaintiff fails to state a cause of action relative to this claim. Further, to the extent that the plaintiff's related claim -- that prison officials at DCI repeatedly failed to honor his requests for a geographical transfer to Elayn Hunt Correctional Center in St. Gabriel, Louisiana -- may be seen to have been administratively exhausted, this claim is not one of constitutional dimension. The law is well-settled that inmates have no justifiable expectation that they will be incarcerated in any particular prison within a state. Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Administrative transfers of state prisoners to other prisons within the state, the conditions of which may be more or less favorable, are subject to the discretion of prison officials and do not constitute a deprivation of any constitutional rights. Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). The plaintiff's claim that he was denied a geographical transfer, therefore, has no arguable basis in law.

Finally, the plaintiff complains throughout his Complaint of the

alleged ineffectiveness of the prison administrative procedure at DCI. The plaintiff alleges that in April 2009, he submitted four (4) grievances which were thereafter mishandled and wrongly rejected by prison officials. He complains that prison officials have failed to process his administrative grievances and disciplinary appeals, have failed to investigate or respond thereto, and have abused the administrative process by manipulating the rules so as to reject legitimate claims and/or delay their resolution. Further, the plaintiff complains that the defendants' failure to properly address his grievances and disciplinary appeals constitutes a pattern of retaliation and racial discrimination against him.

The plaintiff's claim fails to rise to the level of a constitutional violation. Specifically, the plaintiff has no constitutional right to have his administrative grievances or disciplinary appeals addressed, investigated, or favorably resolved. <u>Mahogany v. Miller</u>, 252 Fed.Appx. 593 (5th Cir. 2007). Moreover, there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeals for the Fifth Circuit in <u>Geiger v. Jowers</u>, 404 F.3d 371 (5th Cir. 2005):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous.... [The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

Accordingly, the plaintiff's claim regarding the alleged failure of the defendants to properly address, investigate or respond to his administrative grievances and disciplinary appeals is without legal foundation and must be dismissed. Further, with regard to the

20

plaintiff's assertion that the actions of the defendants have been motivated by retaliatory and/or racially discriminatory animus, these assertions are entirely conclusory, and an inmate plaintiff is required to provide more than mere conclusory allegations of such motivation. See Woods v. Smith, 60 F.3d. 1161 at 1166 (5th Cir. 1995), cert. denied, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996) ("The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred."); Pedraza v. Meyer, 919 F.2d 317 (5th Cir. 1990) (holding that vague and conclusory allegations of discrimination are insufficient to state an equal protection claim). Accordingly, the plaintiff's claims in this regard are subject to dismissal as legally frivolous.

Although the plaintiff seeks to invoke the supplemental jurisdiction of this Court, a District Court may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that the plaintiff's federal claims asserted against the moving defendants be dismissed, the Court concludes that it is appropriate for the Court to decline the exercise of supplemental jurisdiction over the plaintiff's state law claims.

RECOMMENDATION

It is recommended that the plaintiff's claims asserted against

21

defendants Col. Bently, Lt.Col. Brumfield, Major Wordly, Capt. K. Steward, Capt. McCray, Capt. Miley, Lt. Moore, Msgt. Sanders, and Nurse "Jane Doe" be dismissed for failure of the plaintiff to serve these defendants within 120 days as mandated by Rule 4(m) of the Federal Rules of Civil Procedure. It is further recommended that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims that the defendants' Motion for Summary Judgment, rec.doc.no. 17, be granted in part, dismissing certain of the plaintiff's claims for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e, and that the plaintiff's remaining claims be dismissed as being without legal foundation pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

Signed in chambers in Baton Rouge, Louisiana, January 11, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**